[Crim. No. 5752. Second Dist., Div. One. June 10, 1957.]

THE PEOPLE, Respondent, v. MANUEL REYES
MERINO, Appellant.

Forno & Umann for Appellant.

Edmund G. Brown, Attorney General, and Arthur L. Martin, Deputy Attorney General, for Respondent.

FOURT, J.—This is an appeal from a judgment of conviction for violation of the provisions of section 11500 of the Health and Safety Code (possession of narcotics).

In an information filed April 10, 1956, in Los Angeles County, the defendant was charged with a violation of the provisions of section 11500, Health and Safety Code, and further, it was charged that before the commission of the offense

charged, namely in 1950, he was convicted of the crime of robbery and served a term in the state prison therefor. The defendant pleaded not guilty and denied the prior conviction. A trial by jury was waived by the defendant, his attorney and the district attorney. By stipulation, the case of the People was submitted on the transcript of the testimony taken at the preliminary hearing and the exhibits referred to therein. The defendant did not testify in his own behalf, nor did he present any witnesses or other evidence. The defendant was found guilty as charged, and it was further found that the charge of the prior conviction was true and the defendant was thereupon sentenced to the state prison, the sentence to run concurrently with the sentence on which he was then on parole.

A résumé of the facts is as follows: Between 11:30 o'clock a. m. and noon, on March 21, 1956, Frank Batelle, a police officer of the Los Angeles Police Department, met a "confidential informer," whom the officer had known for 10 years and had been in direct contact with on and off for the past three or four years, when the informant was not in jail. On previous occasions the officer had received information from the informant. The informant told the officer that "he would take [Batelle] and point out a house in which a known narcotic pusher was living and also that he [the narcotic pusher] had approximately two ounces of heroin in the house at that time"; that defendant Merino worked for Armando Mendoza and that the narcotics had been brought from Tijuana two or three days before the date of the conversation, and some of which were the narcotics the defendant had in his possession at the house in question. The officer had known the defendant previously by nickname from a source other than the informant. The officer drove with the informant to a stated address, which the informant pointed out as the house where the narcotics were. The informant also told the officer that the black Oldsmobile '98 automobile, parked in front of the house, was the car owned by the defendant. Following the pointing out of the house, the officer drove the car in which they were riding four or five blocks away and let the informant out. The officer who had been given the information, and another officer named Frias, returned at once to the house in question. Batelle entered the front door and Frias entered the side or rear door of the house. The front screen door was closed, but the wooden door was open, as was the door through which Frias entered. Upon entering,

the officers were met by the defendant's wife, who screamed and wanted to know who they were. The officers identified themselves as police officers and asked for "Largo," the defendant's nickname. She stated that he was in the bathroom taking a shower, but the officers heard no sound of running water. At about this time the defendant opened the bathroom door and started to come out, and when Batelle identified himself, the defendant attempted to slam the bathroom door. Batelle put his foot in a position to the end that the door could not be shut, and a struggle ensued between the officer and the defendant. The defendant was then handcuffed and Batelle found a metal tray containing 37 capsules of heroin on the window sill directly above the toilet bowl in the bathroom. Shortly after the arrest the officer and the defendant, in the presence of the defendant's wife, had a conversation in which the defendant freely and voluntarily stated that he had no more "stuff," and that the narcotics which had been found belonged to him, and that his wife knew nothing about it.

 The defendant contends that the narcotics in question were obtained as the result of an unlawful search and seizure, and were erroneously admitted into evidence in violation of his constitutional rights.

This is not a case where the officer received information from an anonymous person, or just a mere "tip," nor is it the situation where the officer was told that "maybe" or "perhaps" the defendant might have some heroin in his possession. The officer had specific, positive and definite information regarding the name of the defendant, his employer, the source of the narcotics, the amount of the narcotics and the address of the defendant. Further, there is some evidence that the officer had some knowledge of the defendant from another source.

Penal Code, section 836, provides, among other things:

"A peace-officer may make an arrest in obedience to a warrant delivered to him, or may, without a warrant, arrest a person:

". . . . . . . . . . . .

"3. When a felony has in fact been committed, and he has reasonable cause for believing the person arrested to have committed it. . . ."

In *People* v. *King,* 140 Cal.App.2d 1, at pages 5 and 6 [294 P.2d 972], it is said:

"It is settled that reasonable cause to justify an arrest

may consist of information obtained from others and is not limited to evidence that would necessarily be admissible at the trial on the issue of guilt. (Citing cases.)

" 'The term, reasonable or probable cause, has been defined: "By 'reasonable or probable cause' is meant such a state of facts as would lead a man of ordinary caution or prudence to believe, and conscientiously entertain a strong suspicion, that the person accused is guilty." (*In re McCarty,* 140 Cal.App. 473, 474 [35 P.2d 568].)

" 'The term, probable, has been defined as meaning "having more evidence for than against; supported by evidence which inclines the mind to believe, but leaves some room for doubt." (*Ex parte Heacock,* 8 Cal.App. 420, 421 [97 P. 77].)' (*People* v. *Novell,* 54 Cal.App.2d 621, 623-624 [129 P.2d 453].)

"It was stated in *People* v. *Brite,* 9 Cal.2d 666, at page 687 [72 P.2d 122] . . . : ' "Probable cause is a suspicion founded upon circumstances sufficiently strong to warrant a reasonable man in the belief that the charge is true." (Citing cases.) Reasonable or probable cause is a question of law, where there is no conflict to be decided by the court. (Citing cases.)'

"Appellant also contends that the confidential informant had ample time to secure a search warrant and that such course should have been followed. It is immaterial whether the informant had time to secure a warrant. The arrest, search and seizure were effected by the officers and not by the informant. The question is whether the officers had probable cause to arrest the appellant and incidentally search the immediate premises."

Under the facts of this case, we are of the opinion that the officer had reasonable cause to justify the arrest. ■ The officers were not limited to evidence that would necessarily be admitted at the trial on the issue of guilt. (*People* v. *Boyles,* 45 Cal.2d 652, 656 [290 P.2d 535]; *Willson* v. *Superior Court,* 46 Cal.2d 291, 294 [294 P.2d 36].) There was no requirement here that the name of the informant be disclosed. (See *People* v. *Gonzales,* 141 Cal.App.2d 604, 607, 608 [297 P.2d 50].)

It is apparent, further, that had the officers not acted with the alertness with which they did act, the evidence might well have been flushed down the toilet.

■ After the officers were in the house the defendant's action in attempting to prevent their entry into the bath-

room, where the narcotics were found, was ample corroboration of the information the officers had from the informant to give them reasonable cause to believe that a felony was being committed in their immediate presence. (*People* v. *Martin*, 45 Cal.2d 755, 762, 763 [290 P.2d 855].)

The judgment of conviction is affirmed.

White, P. J., and Doran, J., concurred.