[Crim. No. 1393.   Fourth Dist.   Apr. 24, 1959.]

THE PEOPLE, Respondent, v. CHARLES FREDERICK UNDERHILL et al., Appellants.

Charles Frederick Underhill, in pro. per., and Thomas Whelan for Appellants.

Stanley Mosk, Attorney General, and John Huntington, Deputy Attorney General, for Respondent.

GRIFFIN, P. J.—Defendants and Appellants Charles Frederick Underhill, Daniel Martin Wynn, and Rita Irene Wynn were charged with the unlawful possession of a narcotic (marijuana) on June 20, 1958, in violation of section 11500 of the Health and Safety Code. Defendant Underhill was charged with five prior felonies, 1 and 2, altering United States money orders; 3, grand larceny, second degree; 4 and 5, White Slave Traffic Act conspiracy. They pleaded not guilty to the offenses charged. Underhill admitted prior felony conviction (No. 3) and denied the others. Defendant Daniel Wynn admitted a prior felony conviction of possession of a narcotic. Each individually waived a trial by jury, and the result was a conviction of all defendants on the offenses charged. It was found that defendant Underhill had been previously convicted of felonies 1, 3 and 4 above mentioned. Underhill and Daniel Wynn were committed to state's prison. Rita Wynn was granted probation. Motions for new trial were denied.

### FACTS

About 4 a. m. on January 20, 1958, two police officers were stationed on an access road leading to the main highway about one mile north of the Mexican border. Sergeant Anson saw a 1948 or 1949 Plymouth car, license Number HYG-812 approaching the main highway near a stop-sign intersection. The vehicle did not stop. It crossed through at about 25 miles per

hour. The officers pursued with the red lights on their car burning. Defendants did not then stop but did slow down. After about one-quarter mile chase they stopped and the officer flashed his light in the car and saw the occupants. Defendant Underhill was driving. Mr. Wynn was seated in front with him. Mrs. Wynn was in the rear seat. Mr. Wynn was wearing a brown and white, or dark and white striped shirt. Prior to this time Sergeant Anson had received information from a deputy sheriff Bonder, stationed at the border, involving an individual wearing a brown and white striped shirt. Bonder told Sergeant Anson that the border patrol had chased a fellow they believed had thrown some narcotic over the international fence and had lost him, and that the man was white, young, had short hair, and wore a striped shirt (brown and white). When he flashed the light on him in the car he said he thought defendant Wynn might be this person. He was wearing a brown and white striped shirt. The officer admitted they originally pursued defendant's car because of his failure to stop at the intersection, but testified that after defendants stopped an officer flashed his light in the car window and Underhill got out and came back and wanted to know what the trouble was; that he said: "You know what the trouble is" and Underhill said "he knew he ran the stop sign"; that he then said to him: "Who is the fellow in the car with the striped shirt?" and that defendant answered they were friends of his; that the officer then asked him if he could take a look through the car and Underhill said "Yes"; that he then went up to it and started talking with defendant Wynn and his wife; that all of them appeared to be very nervous and it was quite noticeable; that the men began to perspire, even though it was a very cold night, and the perspiration ran down their foreheads; that he then asked Wynn to step out and he pressed the glove compartment and found it was locked; that Underhill gave him the key to it but it would not open; that Underhill then took the key and opened it and nothing was found; that about that time all defendants were glancing at each other, appearing very nervous, looking down toward the cushion at the driver's seat; that as the officer reached in that direction Underhill said: "I don't know anything about that stuff"; that he lifted up the seat and found a large package about the size of a loaf of bread wrapped with cellulose tape; that he tore it open and found what he believed to be and was subsequently proved to be marijuana; that he asked him who owned it and Mrs. Wynn and Underhill both said they knew

nothing about it; that Mr. Wynn made no comment; that the officer remarked it appeared to him to be marijuana and he was arresting them for possession of it; that defendants made no comment; that he asked who owned the car and Underhill said it belonged to his stepson and wanted to know if the package proved to be marijuana whether the car would be confiscated. Some tickets were found in the car and Underhill was asked if he had been to Tijuana. He remarked that he had been there a couple of times. Wynn told his wife to keep her mouth shut.

As evidence that Wynn had previous knowledge of and had used marijuana, the prosecution offered a witness who testified that Wynn, on a previous occasion, had been shown some marijuana by him and that Wynn told him he had been a user of it for several years and had pleaded guilty to a charge of possession of marijuana in Los Angeles. In reference to the present charge, defendant Mr. Wynn told an officer that the three defendants had been in Tijuana that night, came across the border, had some argument between them, and went back and then returned; that they were stopped for failure to make a boulevard stop and the package was found under the seat; that Wynn stated he didn't know anything about this package or marijuana in general, but admitted that in 1954 he had smoked it; that the dark and white striped shirt he was wearing was his and no other person had worn it; that the clothing worn by Underhill and Mr. and Mrs. Wynn that morning was shown to them; that he removed debris from this clothing and Mrs. Wynn's purse, had it analyzed, and that each article showed the presence of particles of marijuana.

At the trial, in defense, Underhill testified they had been to Tijuana, had taken the wrong road on returning, and were trying to get back on the main highway. He denied giving the officer permission to search the car; claimed the officer demanded the keys to it and stated that no furtive glances were exchanged between the defendants before the marijuana was found; denied making any statement to the officers about any "stuff" being under the seat and said he was not perspiring, because it was cold that night.

All three defendants testified on the question of reasonableness of the search and what they claimed took place at the scene. They denied any consent of Underhill to search the car; and testified that although Mr. Wynn was wearing a dark and white striped shirt, it was covered by a dark colored jacket he was wearing at the time. At the trial Underhill, for

the first time, admitted ownership of the marijuana and said he purchased it in Tijuana. He claimed the Wynns (who did not testify on the subject) were not present when he purchased it. However, according to an officer, Underhill previously told him that after the officer stopped them that night, one officer was very interested in the appearance of Wynn, seated in the front seat; that this officer asked Underhill if it was all right to search the glove compartment of the car and he gave the officer a key to it and told him to go ahead; that almost immediately thereafter, they found the package under the seat and that it appeared to him the officers had been looking for someone who looked like Daniel Wynn. On his appeal Underhill's defense is predicated upon the claimed ground of illegal search and seizure. He cites such authority as *People* v. *Molarius,* 146 Cal.App.2d 129 [303 P.2d 350]; *People* v. *Kitchens,* 46 Cal.2d 260 [294 P.2d 17]; *People* v. *Blodgett,* 46 Cal.2d 114 [293 P.2d 57]; and *People* v. *Gale,* 46 Cal.2d 253 [294 P.2d 13]. Defendants Wynn include that particular ground with the additional claim of lack of knowledge that the marijuana was in the car or that Underhill had purchased or had possession of it, citing *People* v. *Antista,* 129 Cal.App.2d 47 [276 P.2d 177]; and *People* v. *Romero,* 156 Cal.App.2d 48 [318 P.2d 835].

Underhill argues that it would be unreasonable to believe he consented to the search of the car because he was then on parole from a state's prison and accordingly he naturally would not have consented; that he was afraid of officers in general and when the officers demanded the keys he turned them over to them. While this may have been a logical factual argument, the evidence on the subject of consent was in conflict. The trier of fact was authorized to hold there was a consent to search the car. In addition, the officers were reliably informed that a person dressed in a white and brown shirt was previously involved in some possible smuggling of a package of some description across the border. Upon apprehension the officers noticed such a described person seated in the car coming from the direction of the border. The actions of this person, when considered in connection with the actions of the other occupants, might well indicate guilty knowledge of the possession of some narcotic which would put a prudent officer on further inquiry in this respect. Under all the circumstances related the search was authorized. (*People* v. *Melody,* 164 Cal.App.2d 728, 733 [331 P.2d 72]; *People* v. *Hood,* 150 Cal.App.2d 197, 200 [309 P.2d 856]; *People* v.

*Jackson,* 164 Cal.App.2d 759, 762 [331 P.2d 63]; *People* v. *Weathers,* 162 Cal.App.2d 545, 546 [328 P.2d 222] ; *People* v. *Hanley,* 156 Cal.App.2d 544, 546 [319 P.2d 706] ; *People* v. *Lujan,* 141 Cal.App.2d 143, 147 [296 P.2d 93] ; *People* v. *Torres,* 158 Cal.App.2d 213, 215 [322 P.2d 300] ; *People* v. *Garnett,* 148 Cal.App.2d 280, 283 [306 P.2d 571].)

There is testimony that while Underhill and Mr. Wynn occupied separate jail cells, after their arrest, Mr. Wynn wrote a note to Underhill threatening to kill him if he did not assume the entire blame for the possession of the marijuana that night. When confronted with this evidence Underhill said he did not pay much attention to the note because Mr. Wynn was "all shook up." The Wynns' conduct, actions, and the presence of particles of marijuana on their clothing and in Mrs. Wynn's purse might well indicate knowledge on their part that marijuana was present in the car at the time. (*People* v. *Hood,* 150 Cal.App.2d 197, 202 [309 P.2d 856] ; *People* v. *Basco,* 121 Cal.App.2d 794, 796 [264 P.2d 88] ; *People* v. *Arnold,* 199 Cal. 471, 495 [250 P. 168] ; *People* v. *Robarge,* 151 Cal.App.2d 660, 668 [312 P.2d 70] ; *People* v. *Torres,* 98 Cal.App.2d 189, 193 [219 P.2d 480].)

Judgment and order affirmed.

Mussell, J., and Shepard, J., concurred.

A petition for a rehearing was denied May 22, 1959, and the petition of appellant Underhill for a hearing by the Supreme Court was denied June 18, 1959.