[Crim. No. 1519. Fourth Dist. Oct. 14, 1959.]

THE PEOPLE, Respondent, v. ALBERT ROBERT BRAJEVICH, Appellant.

*Assigned by Chairman of Judicial Council.

Odra L. Chandler and Joseph A. Armstrong, under appointment by the District Court of Appeal, for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and John M. Huntington, Deputy Attorney General, for Respondent.

SHEPARD, J.—Defendant was charged, tried and convicted of a violation of Health and Safety Code, section 11500 (unlawful possession of narcotics). Defendant admitted two prior convictions of felony (theft of government property (1946) and burglary (1950)).

The facts pertinent to the question before us are as follows: About 11:30 p. m. on May 24, 1958, officers observed a green 1950 Studebaker sedan parked near 9911 Sylvan Street in Anaheim, California. On checking the registration slip the name of defendant herein appeared as owner. After leaving the Studebaker and between 11:45 p. m. and 12 midnight the officers observed this defendant walking near the intersection of Sherrill and Oneida Streets about 150 feet distant from the parked Studebaker. The officer driving brought his headlights directly to focus on defendant, stopped, and as one of the officers stepped from the car defendant appeared to make an underhand flicking or throwing motion with his right hand. The officers then and there interrogated defendant who stated his home was at 9862 Sherrill. He admitted having been twice previously arrested for burglary and having served time in a California penitentiary. He stated that he owned a green and white 1957 Pontiac automobile; that he was walking because he had loaned it to some friends, but when asked for their names he was unable to give the names; that he owned no other car; that he did not own a green Studebaker sedan; and that he did not own the green Studebaker sedan

parked about 150 feet away on Sylvan near the corner of Sylvan and Oneida. The officers and the defendant then moved to the location of the Studebaker, and defendant again denied ownership of the Studebaker but when confronted with the registration certificate finally admitted ownership. He then denied having the keys to the car and claimed the keys were at his home. He offered no explanation as to why his car was parked in front of the home of a stranger and a considerable distance away from his own home. He did not then assert that he had loaned the car to anyone. He refused to permit the officers to look in his car but instead offered to allow them to search his home. Actually, the keys to the car were in his pocket. The officers secured the keys without any objection from the defendant and unlocked the car, and found in the trunk of the car a suitcase containing a considerable assortment of narcotics in various types and numbers of containers, with a considerable number of empty containers. Defendant denies any knowledge of the narcotics or how they found their way into the car. He produced some evidence at the trial tending to implicate one Charles Bye, but made no such suggestion at the time the car was searched and he was arrested. The testimony respecting the use of the car by Charles Bye is, however, in serious conflict. At the trial defendant testified the car was parked at this spot at about 7:30 p. m. and that from that time on no one else had access to it. His trial testimony was that he parked it there to avoid repossession or attachment. In the car were also found dynamite caps and primer cord. Defendant asserted he was going to use them for prospecting for gold in the Capistrano hills and that a friend of his that met him in a bar sold them to him for the sum of $5.00. Again, he could not remember the friend's name. The officers testified the car hood was cold and the car was wet with dew all over. Defendant in effect denied this. Defendant called a witness, James A. Layton, the resident of 9911 Sylvan (a stranger to defendant) who testified to having heard a car drive up facing the Studebaker at about 11:30 p. m. and a period of about an hour thereafter during which conversations among about five people continued, some of which was about the contents of the trunk of the Studebaker sedan. This was apparently the period during which the officers, and later the officers with the defendant, were checking the car.

The first contention of defendant is that the evidence of narcotics found in the car was improperly admitted because

the car was illegally searched. With this contention we cannot agree. Defendant discusses at length his contention that there was an unlawful arrest for failure to register as an ex-convict, and also discusses disassociation of the car from the subject of arrest. However, the right of the officers to search the car in this case is not dependent upon those matters and a discussion of them only confuses an analysis of that right. Because of the rapidly movable character of an automobile it has long been recognized that an officer may search it when the facts and circumstances there present give him reasonable cause to believe that it is carrying contraband.

Our rules regarding restriction of search and seizure are primarily based on the Fourth Amendment to the Constitution of the United States. That amendment was designed to prevent the type of outrageous, unwarranted and unreasonable intrusion by government officers into the private homes, papers and business affairs of the citizen, such as had been known in early English history and, at times, in the administration of American Colonial affairs. At an early date in our own history the very Congress that passed the Fourth Amendment, as well as the Supreme Court of the United States, recognized the distinction between search of a movable vehicle and a home or business building. This policy was expressed by the Supreme Court of the United States as follows:

"On reason and authority the true rule is that if the search and seizure without a warrant are made upon probable cause, that is, upon a belief reasonably arising out of circumstances known to the seizing officer, that an automobile or other vehicle contains that which by law is subject to seizure and destruction, the search and seizure are valid. The Fourth Amendment is to be construed in the light of what was deemed an unreasonable search and seizure when it was adopted, and in a manner which will conserve public interests as well as the interests and rights of individual citizens." (*Carroll* v. *United States*, 267 U.S. 132, 149 [2] [45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790].)

Thus it is clear that as far as the Fourth Amendment to the Constitution of the United States is concerned, it does not prohibit an officer who has reasonable cause to believe that a transportation vehicle contains contraband or stolen property from searching the vehicle and using that which is found therein in the prosecution of a defendant in a criminal case. (*Carroll* v. *United States, supra*; *Husty* v. *United States,*

282 U.S. 694 [51 S.Ct. 240, 75 L.Ed. 629, 74 A.L.R. 1407]; *Scher* v. *United States,* 305 U.S. 251, 254 [4] [59 S.Ct. 174, 83 L.Ed. 151].)     In speaking of the problem of protecting citizens from rash and unreasonable interferences with privacy and at the same time giving reasonable flexibility to law enforcement, the Supreme Court of the United States uses the following language:

"The rule of probable cause is a practical, nontechnical conception affording the best compromise that has been found for accommodating these often opposing interests. Requiring more would unduly hamper law enforcement. To allow less would be to leave law-abiding citizens at the mercy of the officers' whim or caprice." (*Brinegar* v. *United States,* 338 U.S. 160, 176 [10-11] [69 S.Ct. 1302, 93 L.Ed. 1879].)

Our own California Supreme Court has recognized and adopted the same policy for the State of California, and has expressed it as follows:

"Since an automobile may readily be moved from place to place, its search without a warrant is not unreasonable if the officer has reasonable cause to believe it is carrying contraband." (*People* v. *Gale,* 46 Cal.2d 253, 255 [1] [294 P.2d 13].) *People* v. *Martin,* 46 Cal.2d 106, 108 [2] [293 P.2d 52] recognizes the same policy.

It is also clear that there was nothing unreasonable in the officers' questioning a man walking in the residential area in the middle of the night. (*People* v. *Blodgett,* 46 Cal.2d 114, 117 [2] [293 P.2d 57].)

It is difficult to propound a hard and fast rule as to what may constitute reasonable grounds for the officers' belief that a car may carry contraband, due to the myriads of intermingling circumstances that may carry belief or conviction to the mind of an ordinarily reasonable person. Thus, each case must to some extent stand on its own feet under the same general direction of "reasonable grounds for belief."

The rule on arrest is somewhat similar to that on search of a vehicle and is quoted as follows in *People* v. *Anders,* 167 Cal.App.2d 65, 67 [2] [333 P.2d 854]:

" 'The real criterion as to the reasonableness of a search is whether or not there has been the commission of a public offense in the presence of a police officer, or whether, under the facts, the police officer has reasonable grounds to believe that the defendant may have committed a felony.' "

In analyzing the question of the presence or lack of reasonable or probable cause, the court must weigh and con-

sider all of the circumstances apparent to the officer at the time he is required to act. (*People* v. *Silvestri,* 150 Cal.App. 2d 114, 117 [2] [309 P.2d 871]; *People* v. *Jackson,* 164 Cal.App.2d 759, 761 [2] [331 P.2d 63]; *People* v. *Underhill,* 169 Cal.App.2d 862, 866 [1] [338 P.2d 38].)

██ Turning then to the case at bar, we find the officers dealing with a man walking in a residential area in the middle of the night; admittedly twice previously arrested for burglary; having served time in a penitentiary; his Studebaker car parked about 150 feet away; stating he owned a green and white Pontiac instead of a Studebaker; stating he was walking because he loaned his car to friends but unable to name the friends; when taken to the Studebaker still denying ownership but when confronted with the certificate of registration admitting ownership; denying he had the keys to the car; refusing to permit the officers to look in the car, but offering to allow them to search his home which was a considerable distance away; it hardly needs further recital or discussion to make clear the appearance of guilty knowledge resultant to the mind of any reasonable man from these many circumstances and falsehoods coming from the defendant. In our opinion, the trial court correctly assessed the circumstances as constituting reasonable cause for the officers' belief that the car carried contraband, and that the defendant knew of that fact.

██ Next, defendant contends the evidence was insufficient to support a finding by the jury that the defendant knew of the presence of the narcotics in his car and that such narcotics were there with his consent. ██ On this contention we must first keep in mind the rule that it is the function of the jury in the first instance, and later the trial court on motion for a new trial, to weigh the evidence and its decision may not be interfered with unless "upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the court below." (*People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778]; *People* v. *Toms,* 163 Cal. App.2d 123, 127 [5] [329 P.2d 90].) ██ The fact of knowledge may be shown by circumstantial evidence. (*People* v. *Magdaleno,* 158 Cal.App.2d 48, 51 [3] [322 P.2d 89].) ██ Here we have narcotics in a locked car owned by defendant with defendant in possession of the only known keys. Evidence of use of the car by others is conflicting. The car is admittedly parked by the defendant a considerable distance from his home. He tells a whole series of falsehoods in an

effort to prevent his connection with the car being known, and later to prevent it from being searched. The jury were under no obligation to give full credence to his explanation. In our opinion, the circumstances were ample to sustain the jury's implied finding that the defendant intentionally had possession, with knowledge, of the narcotics found in his car.

Next the defendant contends that the trial court erred in refusing to give certain instructions requested by defendant on the subject of possession and knowledge. A portion of these instructions were objectionable because of their argumentative form. However, regardless of that, the court fully and correctly instructed the jury of the necessity for evidence that the defendant knew of and exercised control over the narcotics found in his automobile; that they must not find the defendant guilty unless he intentionally and knowingly possessed the narcotics; that knowledge is not presumed; and that it must be established by evidence. One of these instructions was in the form commonly referred to as CALJIC 703. (*People* v. *Anders,* 167 Cal.App.2d 65, 68 [8] [333 P.2d 854].) The court is not required to give instructions repeating the same thought or proposition of law in the particular language desired by the party. (*People* v. *Tedesco,* 1 Cal.2d 211, 220 [5] [34 P.2d 467]; *People* v. *MacCagnan,* 129 Cal.App.2d 100, 109 [16] [276 P.2d 679].)

We find no contrary views expressed in any of the authorities cited by defendant. In *People* v. *Gory,* 28 Cal.2d 450 [170 P.2d 433], the judgment was reversed in part because of the absence of the very instructions which the court did give in the case at bar. (*People* v. *Bledsoe,* 75 Cal. App.2d 862 [171 P.2d 950], involved the failure of the prosecution to rebut uncontradicted evidence of the exclusive possession of the automobile by others just before the finding of the narcotic. Similar circumstances to those in the Bledsoe case were found respecting an apartment in the cited case of *People* v. *Antista,* 129 Cal.App.2d 47 [276 P.2d 177]. In the case at bar, the court's instruction warned the jury that the presence of the narcotic in the automobile is insufficient, standing alone; that there must be some evidence of knowledge and assumption of control by defendant.

Next the defendant contends that the district attorney was guilty of prejudicial misconduct in suggesting to the jury that men like the defendant caused or aided in the narcotics addiction of certain other persons. First, it must be observed that while defendant was not charged with sale,

the character and diversity of the narcotics in his possession could not be overlooked by any reasonable person in considering the purpose of possession. Much more important, however, was the testimony from the defendant's own witness, through which sales from the defendant to Charles Bye were indicated. Thus it cannot be said that the district attorney's statement was without any evidentiary support. ▮ Furthermore, the defendant made no objection to the district attorney's statement. While the defendant was not an attorney he had been through at least two other criminal proceedings (two prior convictions), and the court fully warned him, at the time he insisted on discharging his attorney, of the fact that the court could not undertake to act as his lawyer. (*People* v. *Pearson*, 150 Cal.App.2d 811, 815 [3], 819 [12] [311 P.2d 142].) Even if the district attorney's statement did to some extent overstep the bounds of normal legitimate argument we cannot say that whatever slight damage might have been caused could not have been cured by court admonition, had the matter been promptly called to the trial court's attention. (*People* v. *Lyons*, 50 Cal.2d 245, 262 [12] [324 P.2d 556].) We are also of the opinion from a review of the entire cause that there is no reasonable probability that a result more favorable to the defendant would have occurred had the brief reference by the district attorney to the subject of sale not been made. (*People* v. *Watson*, 46 Cal.2d 818, 835 [12] [299 P.2d 243].)

The judgment and orders appealed from are affirmed.

Griffin, P. J., concurred.

A petition for a rehearing was denied November 12, 1959, and appellant's petition for a hearing by the Supreme Court was denied December 10, 1959. Peters, J., was of the opinion that the petition should be granted.