[Crim. No. 4414. First Dist., Div. Three. Feb. 14, 1964.]

THE PEOPLE, Plaintiff and Respondent, v. ESTER VERRETTE, Defendant and Appellant.

Garfield W. Steward for Defendant and Appellant.

Stanley Mosk, Attorney General, Albert W. Harris, Jr., Robert R. Granucci and John F. Kraetzer, Deputy Attorneys General, for Plaintiff and Respondent.

DEVINE, J.—On February 8, 1963, officers were watching the entrance to the premises, described below, at 1528 Haight Street, San Francisco. They commenced their vigil at about 8 p. m. It was brought out on cross-examination by counsel for appellant's codefendant, James Wesley Fisher, that the reason for the surveillance was that the officers had information going back to 1961 that there were large quantities of marijuana being sold out of the premises, and that they had made a purchase of about a kilo of marijuana at 1528 Haight Street on January 18, 1963. The name of the 1961 informant was asked of an officer, on cross-examination by counsel for appellant's codefendant, but the court sustained an objection to this.

At about 10:30 p.m., appellant's codefendant, Fisher, entered the premises. He had been known to one of the officers since 1960, and he had been seen entering 1528 Haight Street on occasions prior to February 8, 1963. Shortly after midnight, and therefore on February 9, 1963, Maxwell Thomas entered 1528 Haight Street. Thomas came out in about 15 minutes. He was carrying a brown paper bag. The officers followed him, and as they approached, he threw the bag away. He denied that he had thrown it. He denied that he had come from any house and said he had come from a store. The officers found what appeared to be (and which later was determined to be) marijuana in the bag and a marijuana cigarette in Thomas' pocket.

The officers returned to the area in front of 1528 Haight Street. Fisher opened the door from the inside. Inspector Logan yelled to him: "Police Officer. I would like to talk to you." Fisher stepped back about one foot and dropped a bag he had held in his right hand. (This was later found to contain marijuana, but at the time of the rapidly occurring events, the contents were not seen.) He was then handcuffed. Fisher "yelled up, with a head motion up the stairs, 'Ester, the cops, destroy.' "

The officers, having entered the open door, ran up the stairs. Almost directly at the top of the stairs is a door. This was opened and appellant "peered out," but her whole body, not just her head, was seen; she was dressed in underclothing and perhaps a robe. Logan told her he was a police officer and that he wanted to talk to her. She slammed the door. Almost simultaneously, the officer pushed the door in, causing some damage to the molding around the lock.

The officer saw a brown bag similar to the one that Thomas had held, on the floor by the bed. It contained what

appeared to be (and later was proved to be) marijuana. More than $1,000 in cash was found in the bedclothes. A cigarette was found on the headboard of the bed, and it, too, contained marijuana. Appellant was asked if she had any more and she said no, that the officers could "search this place high and low, you won't find any more." The officers did search other rooms on the floor (it was the second floor), another bedroom, living room, kitchen, several vacant rooms where furniture was stored. Appellant had keys to the other rooms except one, and of this one, the officers forced the door. Appellant was the only occupant. No more marijuana was found.

Appellant was convicted of violation of section 11530.5 of Health and Safety Code (possession of marijuana for sale). She did not testify at her nonjury trial. Her points on appeal are: (1) It was error to deny the name of the 1961 informant. (2) There was not reasonable cause for the search without a warrant which brought to light the evidence.

1. As to the name of the informant: At trial, appellant made no attempt to gain the name of the informant in 1961; counsel for codefendant attempted to cross-examine about the name, but, he said, just by way of testing the credibility of the officer, and he virtually conceded that he was not entitled to it as discovery. A defendant cannot raise the issue of nondisclosure on appeal when he did not seek disclosure at the trial or move to strike testimony on refusal to disclose. (*Priestly* v. *Superior Court*, 50 Cal.2d 812, 819 [330 P.2d 39].)

Anyway, the People did not rely on what the informant had told the officers in 1961 as the reason for the entry and search. The prosecution did not bring out this testimony; it appeared under cross-examination of an officer, and this shows nonreliance on the informant. (*People* v. *Cuda*, 178 Cal.App.2d 397, 410 [3 Cal.Rptr. 86].) It was clearly put that this rather old information was a reasom for the surveillance, and it was not asked whether the entry and search were based at all on this information. The trial judge stated that the search was justified by the events immediately preceding it. Disclosure is not required where there was reasonable cause for the search apart from an informer's communication. (*People* v. *Williams*, 51 Cal.2d 355, 359 [333 P.2d 19].)

2. The major point is the reasonableness of the search. This is not a case in which the rooms on the second floor of the building were occupied by separate tenants, each

of whom would have his own diminutive "castle," his room, which, to use Lord Chatham's quaint words, "the storm may enter, the rain may enter; but the king of England cannot enter." Had it been so, the mere slamming of the door in the officers' faces would not have justified a search, because the right to be free from unreasonable police intrusions cannot be vitiated by the mere assertion of that right. (*Tompkins* v. *Superior Court*, 59 Cal.2d 65, 68 [27 Cal.Rptr. 889, 378 P.2d 113].)

Although the premises were not described at the trial as thoroughly as one would wish, there was ample evidence from which the judge could draw the conclusion that 1528 Haight Street was the usual flat, so numerous in San Francisco, with its own entrance from the street or from an outside stairway, and that it constituted a single, individual abode. The evidence is this: (1) the building is a large three-story building with a shoe store on the street floor and two resident flats above the store; (2) 1528 has its own address; (3) appellant, after discovery of the marijuana, showed the officers through the other rooms, to which she had keys, on the floor (except the one, where the door was forced); (4) the rooms are usual ones to a flat—living room, dining room, kitchen, etc.; (5) there was no other occupant; (6) the officer carefully corrected his cross-examiner when he asked him about the "apartment" where he found appellant, saying, "It wasn't an apartment, it was a room in the flat"; (7) there was no evidence against all of the above, offered on behalf of appellant, nor was there cross-examination to attack the proposition that appellant was an occupant of a flat. "Flats are as much separate dwellings as ordinary adjoining houses are. The difference is that flats are under one roof, and are divided one from another by a horizontal plane, but ordinary adjoining houses, by a perpendicular or vertical plane." (*McDowell* v. *Hyman*, 117 Cal. 67, 71 [48 P. 984].)

The legality of the entry, then, is to be decided as to the entry which was made into the door leading to the exterior, the one Fisher opened. If entry to the whole abode was legal, the attempted interference by slamming the interior door could be overcome rightfully. (*People* v. *Maddox*, 46 Cal.2d 301 [294 P.2d 6].)

The question, then, is whether the entry through the exterior door and the pursuit of the search were legal. ■ The governing principles are: (1) The search is not to be justified by what it turns up. (*People* v. *Brown*, 45 Cal.2d 640, 643, 644 [290 P.2d 528].) Hence, the contraband which

led to appellant's arrest, which was in the bedroom, is not to be considered as a basis for the search. ■ (2) The circumstances apparent to the officers at the time they were required to act are to be considered. (*People* v. *Brajevich,* 174 Cal.App.2d 438, 444, 445 [344 P.2d 815].) ■ (3) The weight to be accorded the information possessed by the officers at the time they made the arrest is for the trial court in the exercise of its sound discretion. (*People* v. *Ker,* 195 Cal.App.2d 246, 253 [15 Cal.Rptr. 767] ; *People* v. *Fisher,* 184 Cal.App.2d 308, 312 [7 Cal.Rptr. 461].) ■ (4) Search may be lawful although it precedes an arrest. (*People* v. *Torres,* 56 Cal.2d 864, 866 [17 Cal.Rptr. 495, 366 P.2d 823].) ■ (5) Reasonable cause is shown if a man of ordinary care and prudence would be led to believe and conscientiously entertain a strong suspicion that the person is guilty of a crime. (*People* v. *Ingle,* 53 Cal.2d 407, 412 [2 Cal. Rptr. 14, 348 P.2d 577].) ■ (6) Suspects have no constitutional right to destroy evidence. (*People* v. *Maddox,* 46 Cal.2d 301, 306 [294 P.2d 6] ; *People* v. *Gauthier,* 205 Cal.App.2d 419, 427 [22 Cal.Rptr. 888].) ■ (7) It is well known that the public sewerage system affords a convenient, rapid and effective means whereby the occupant of the premises, while maintaining his rights as standing within this dwelling, can get contraband narcotics out of the dwelling. (See *People* v. *Torres, supra,* at p. 867 ; *People* v. *Hurst,* 183 Cal.App.2d 379, 385 [6 Cal.Rptr. 483] ; *People* v. *Merino,* 151 Cal.App.2d 594, 597 [312 P.2d 48].)

■ Now, to apply these principles to the case: The officers, before they completed entry, knew the following: (1) A buy of narcotics had been made by officers at 1528 Haight Street three weeks earlier. (2) Thomas emerged from 1528 Haight Street carrying a bag which he threw away when the officers approached; then he denied that he threw it away and denied that he had come from 1528 Haight Street. The contents of the bag appeared to be marijuana. (3) Fisher, who had been in the premises all the time that Thomas was there, was about to exit carrying a package, which he dropped. (4) Fisher shouted to Ester, ''the cops, destroy.''

These facts justified the officers' ''strong suspicion'' that there were narcotics within the premises which would be on their way to the sea if they did not rush to stop the commanded destruction. *Johnson* v. *United States,* 333 U.S. 10 [68 S.Ct. 367, 92 L.Ed. 436], is distinguishable because there the five justices who constituted the majority believed that

where opium was being smoked in a room, there was time to go to a magistrate for a warrant; and no evidence was threatened with removal or destruction. The fumes would disappear, anyway, and never could be available at trial. The guilty persons within the room presumably were not alerted to the officers' presence. Here, immediate destruction of contraband was threatened. For the officers to have departed with Thomas and Fisher and gone to a magistrate for a warrant, after Fisher's shout, would have been utterly futile. Exigent circumstances surely existed. (*Ker* v. *State of California*, 374 U.S. 23, 41-42 [83 S.Ct. 1623, 1634, 10 L.Ed.2d 726, 743].)

Possession of marijuana is a felony. (Health & Saf. Code, § 11530.) The officers had reasonable cause to believe that a person called Ester had possession of marijuana, probably jointly with Fisher, who called out the order. It is not important that there is no evidence that the officers knew the woman appearing so briefly to be Ester at the time they first saw her. The search was incident to the arrests already made, and to that of appellant, which was made soon after the last discovery and appellant's statements.

Judgment affirmed.

Draper, P. J., concurred.

SALSMAN, J.—I dissent.

It is argued that the officers had reasonable cause to arrest appellant, and hence search without warrant was justified as an incident to her arrest. In my opinion the record here will not support any such contention.

Where, as here, private premises have been entered, doors broken, a general search conducted, and an arrest accomplished, all without any warrant for arrest or search, the burden rests upon the prosecution to show proper justification. (*Badillo* v. *Superior Court*, 46 Cal.2d 269, 272 [294 P.2d 23].) Arrest without warrant may be made if the arresting officer has reasonable cause to believe that the person to be arrested has committed a felony. (Penal Code § 836(3); *People* v. *Privett*, 55 Cal.2d 698, 701 [12 Cal.Rptr. 874, 361 P.2d 602].) Reasonable cause to arrest this appellant must depend upon facts known to the officers at the time they entered the street level entrance leading to appellant's room on the second floor.

This is the testimony:

(1) Officers had some information of narcotics traffic in the

area or at appellant's address. The nature of this alleged traffic is not described.

(2) About three weeks before appellant's arrest, officers made a "buy" at appellant's address.

These facts do not aid in establishing reasonable cause to arrest this appellant and search her premises. There is no testimony to connect her with any of these events, and indeed nothing to indicate that at the time they took place she resided at or was present at these premises. Moreover, demand was made by a codefendant for the names of police informants. The prosecution objected and the court sustained such objection. Later, in deciding the issue of reasonable cause to arrest this appellant the court rejected the alleged prior information and the claimed "buy" as factors supporting reasonable cause. It is clear that refusal to reveal the names of informants is fatal here and removes such prior information and the alleged "buy" from all consideration in the case.

It cannot properly be said that demand for the names of informants was raised only by a codefendant and not by appellant and for this reason appellant may not complain. Appellant and a codefendant were jointly tried before the court without a jury. Demand for the names of informants was properly raised by the codefendant and rejected by the court. It would be too strict a requirement to impose upon this appellant that she also separately demand the names of all informants. The court had given its ruling on this question. Further demand could only incur the wrath of the judge and perhaps risk a citation for contempt of court. In my view she lost no right in her failure to pursue the matter.

(3) Two men, Thomas and Fisher, late at night, separately entered appellant's premises. Thomas came out, carrying a brown bag, and was arrested on the street. The bag contained marijuana. A short time later Fisher appeared at appellant's street level door. He too had a brown bag. Officers seized him at the door. He shouted "Ester, the cops, destroy." Officers immediately rushed past Fisher and up the stairs towards appellant's rooms. Half way up the stairs they saw appellant standing in her doorway. She slammed the door shut. The officers broke in and conducted a general search. They found marijuana. They stripped appellant's bed and found money. They searched all rooms in the premises, breaking at least one other door in the process. After search appellant was arrested.

Neither the arrest of Thomas nor the arrest of Fisher may be used as justification for search of appellant's flat. Search of premises over which the person arrested has possession or immediate control has often been declared valid. (See *People* v. *Dixon*, 46 Cal.2d 456, 458-459 [296 P.2d 557], and cases cited.) Here Thomas was arrested on the street and Fisher at the door downstairs. There is nothing in the evidence to suggest that either had any possession or control over appellant's premises. There is no showing that Thomas and Fisher did not possess narcotics when they first entered appellant's premises, although there is testimony that, at time of entry, they were not openly carrying brown paper bags. As to Fisher, the officers did not know he possessed marijuana at the time they entered, because he was seized and entry made almost simultaneously. At that moment as to Fisher, all the officers knew was that he had a bag.

When Fisher was seized he uttered the cry of warning previously described. Does this help to support the finding of reasonable cause to arrest this appellant? I think not. In my opinion to make entry and search lawful here, reasonable cause to arrest this appellant must exist at the very moment the premises were entered. That is to say, when the officers first crossed appellant's threshold at the downstairs entrance, reasonable cause to arrest her must then have been present or the entry and search violated her constitutional rights. There is no showing in this record that upon entry the officers knew who was upstairs, whether one person or many. Apart from Fisher's words, the officers had no knowledge of appellant and knew of nothing which in any way connected her with any illegal activity.

In *Johnson* v. *United States*, 333 U.S. 10 [68 S.Ct. 367, 92 L.Ed. 436], officers received information of the use of opium in a hotel room. They went to the room and stood outside the door. They smelled the smoke of burning opium and clearly recognized it as such. They did not know who was in the room. They entered, searched and arrested the person found in the room. Entry without warrant was held to violate the constitutional rights of the accused. (See also *People* v. *Soto*, 144 Cal.App.2d 294, 301 [301 P.2d 45].)

If Fisher, when arrested, had said to the officers: "Thomas bought his marijuana from Ester Verrette, who lives upstairs, and she has lots more in her room," would this have supported entry and search? In such case Fisher would have been an informer. He is no less so because of the ambiguous nature

of the information contained in the words he uttered when seized by the officers at the door. He was unknown to the officers, and reliance upon his information alone would not be sufficient to support entry and search. (*Willson* v. *Superior Court,* 46 Cal.2d 291, 294 [294 P.2d 36]. See also *Wong Sun* v. *United States,* 371 U.S. 471 [83 S.Ct. 407, 9 L.Ed.2d 441].)

Respondent seeks to justify breaking into appellant's rooms on the ground that slamming the door as the officers charged up the stairs is such furtive conduct on her part as to give rise to reasonable cause for her arrest. This proposition cannot be supported. At the time appellant slammed her door shut the officers had already entered and search was under way. In *Tompkins* v. *Superior Court,* 59 Cal.2d 65 [27 Cal.Rptr. 889, 378 P.2d 113], the police arrested one Edward Nieman who possessed narcotics. Nieman lived in an apartment with Tompkins. The police, without a warrant, but with Nieman's consent, went to search the apartment. Tompkins appeared at the door and when informed it was the police, "made a motion with his arm to the left and slammed the door shut." The police broke in and found narcotics. The Supreme Court held that until the police kicked the door in, there was no reasonable cause to arrest Tompkins. There, as here, the issue was whether slamming the door shut gave rise to reasonable cause to arrest. The court said: "Petitioner's apparent motioning of someone away from the door and closing it in Inspector Martin's face did not provide the missing elements of reasonable cause to believe that petitioner was guilty of felony. ... If refusal of permission to enter could convert mere suspicion of crime into probable cause to arrest the occupant and search his home, such suspicion alone would become the test of the right to enter, and the right to be free from unreasonable police intrusions would be vitiated by its mere assertion." (See also *People* v. *Cedeno,* 218 Cal.App. 2d 213 [32 Cal.Rptr. 246].)

Search without warrant cannot here be justified on the ground of emergency. The statements of Fisher while at the door were made almost contemporaneously with entry by the officers. In *Johnson* v. *United States, supra,* also a narcotics case, the prosecution relied upon the same claim of urgent necessity to enter as is made here, and the court rejected it. In the Johnson case the officers had positive knowledge that whoever was in the room about to be entered possessed narcotics, yet entry and search without warrant violated the Constitution. Here the officers had no such knowledge. They

did not know who was upstairs, or what if anything they might find upon search.

It has often been held that a search without warrant may not be supported by what it turns up. (*People* v. *Haven*, 59 Cal.2d 713, 719 [31 Cal.Rptr. 47, 381 P.2d 927]; *People* v. *Brown*, 45 Cal.2d 640, 643-645 [290 P.2d 528].) Here it is necessary to rely upon what was in fact found as a result of the search in order to make the arrest of appellant lawful, and to rely upon the arrest to support the search. This circumvention of constitutional rights has always been rejected. (See *Johnson* v. *United States, supra.*) Since in my view of this record reasonable cause to arrest this appellant and search her premises did not exist as a matter of law at the time the premises were entered, the entry violated her rights under both federal and state Constitutions. All evidence, therefore, the result of illegal search, should have been excluded. (*Mapp* v. *Ohio*, 367 U.S. 643 [81 S.Ct. 1684, 6 L.Ed.2d 1081]; *People* v. *Cahan*, 44 Cal.2d 434 [282 P.2d 905, 50 A.L.R.2d 513].)

I would reverse the judgment.

A petition for a rehearing was denied March 4, 1964. Salsman, J., was of the opinion that the petition should be granted. Appellant's petition for a hearing by the Supreme Court was denied April 8, 1964.