[Crim. No. 7359. In Bank. July 9, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. ROBERT EUGENE EDGAR, Defendant and Appellant.

Harold L. Hammond, Public Defender, James E. Marks, Deputy Public Defender, Hill & Dalton and Charles V. Moore for Defendant and Appellant.

Stanley Mosk, Attorney General, John S. McInerny, Michael J. Phelan and Albert W. Harris, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

TRAYNOR, J.—A jury found defendants Edgar and Hollowell guilty of extortion (Pen. Code, § 520), and conspiracy to commit extortion. (Pen. Code, § 182.) In committing these crimes, defendants arranged for Hollowell to take a flashlight picture of the victim, O'Connell, in a compromising position with defendant Edgar in the front seat of O'Connell's car at night. On the basis of O'Connell's testimony as to what occurred in the car, the jury also found Edgar guilty of oral copulation. (Pen. Code, § 288a.) At the trial Edgar admitted being present in the car and signaling Hollowell to take a picture through the windshield as O'Connell leaned over him. He denied, however, that he intended to let O'Connell commit an act of oral copulation and testified that no such act took place. He appeals only from the part of the judgment convicting him of violating section 288a of the Penal Code.

Edgar contends that the picture taken by Hollowell was illegally obtained by police officers and that therefore the trial court erred in admitting it into evidence to corroborate O'Connell's testimony. Although the picture does not show with certainty which version of what occurred in the car was correct, the jury could interpret its depiction of the relative

positions of Edgar and O'Connell as persuasive evidence in support of O'Connell's testimony. Had it been excluded from evidence, it is reasonably probable that the jury would have entertained at least a reasonable doubt that Edgar violated section 288a in carrying out his plan to commit extortion against O'Connell. Accordingly, if the trial court erred in admitting the picture into evidence, the error was prejudicial and the part of the judgment appealed from must be reversed. (See Cal. Const., art VI, § 4½; *People* v. *Watson*, 46 Cal.2d 818, 836 [299 P.2d 243].)

The trial court properly heard evidence on the admissibility of the picture outside the presence of the jury, "for the admissibility of the evidence presented a question of law for the court." (*People* v. *Gorg*, 45 Cal.2d 776, 780 [291 P.2d 469].) There is no substantial dispute as to the facts. The picture was one of three pictures that police officers secured from Edgar's mother. The other two were found to be irrelevant. Edgar lived with his mother and stepfather, and after his arrest, his mother visited him in jail. A deputy sheriff overheard their conversation. Edgar told his mother that there were pictures at home that might be important to his case and asked her to hide them until he told her what to do with them. The deputy sheriff told the police officer in charge of the case about the conversation, and he and another officer went to Edgar's home. They arrived about 10 or 15 minutes before Edgar's mother returned from the jail and were admitted by Edgar's stepfather. When Edgar's mother arrived they told her they knew about the pictures and asked her for them. She told the officers she did not know what she should do and that she thought she should consult an attorney. The officers talked to her for from 15 to 30 minutes and told her two, three, or four times that if she did not deliver the pictures to them, they would be forced to take her to the police station, book her for withholding evidence, obtain a search warrant, and come back and get the pictures. The trial court found that as a result of these statements Edgar's mother went into another room, returned with the pictures, and gave them to the officers. The trial court also found, however, that the officers had a right to arrest her for concealing evidence (Pen. Code, § 135) and therefore concluded that they did not act unlawfully in compelling her to choose between submitting to arrest and giving them the pictures.

174

█ Edgar correctly contends that the officers did not have a right to arrest his mother and that therefore they secured the pictures by an unlawful assertion of authority over her. (*People* v. *Michael*, 45 Cal.2d 751, 753 [290 P.2d 852], and cases cited.)

Penal Code section 135 provides that "Every person who, knowing that any book, paper, record, instrument in writing, or other matter or thing, is about to be produced in evidence upon any trial, inquiry, or investigation whatever, authorized by law, willfully destroys or conceals the same, with intent thereby to prevent it from being produced, is guilty of a misdemeanor." A peace officer may make an arrest without a warrant for a misdemeanor only if "he has reasonable cause to believe that the person to be arrested has committed . . . [the offense] in his presence." (Pen. Code, § 836.) Edgar's mother neither violated nor attempted to violate section 135 in the officers' presence. █ "In order to establish an attempt, it must appear that the defendant had a specific intent to commit a crime and did a direct unequivocal act toward that end; preparation alone is not enough, and some appreciable fragment of the crime must have been accomplished. [Citations.]" (*People* v. *Gallardo*, 41 Cal.2d 57, 66 [257 P.2d 29].) █ Edgar's mother did no more than return home from the jail. At most the officers had reasonable cause to believe that she intended to violate section 135 in the future. She obviously did not intend to hide or attempt to hide the pictures in their presence. It is equally clear that she did not conceal the pictures within the meaning of the statute by her initial refusal to give them to the officers. To hold otherwise would make it a crime for a person merely to assert the right to have a magistrate determine whether police officers are entitled to seize evidence from his home. (See *Tompkins* v. *Superior Court*, 59 Cal. 2d 65, 68 [27 Cal.Rptr. 889, 378 P.2d 113].) Were there a right to arrest persons for insisting on search warrants and to conduct warrantless searches and seizures as incidental to such arrests, search warrants would become pointless niceties except when no one could be found at home.

Moreover, it is immaterial that the officers had reasonable cause to believe the pictures were at Edgar's home. As the United States Supreme Court stated in *Chapman* v. *United States*, 365 U.S. 610, 613 [81 S.Ct. 776, 5 L.Ed.2d 828], "Until *Agnello* v. *United States*, 269 U.S. 20 [46 S.Ct. 4, 70 L.Ed. 145, 51 A.L.R. 409], this Court had never directly decided,

but had always assumed, 'that one's house cannot lawfully be searched without a search warrant, except as an incident to a lawful arrest therein' (*id.*, 269 U.S. at page 32, 46 S.Ct. at page 6 [70 L.Ed. at page 149, 51 A.L.R. at page 413]), but that case explicitly decided that 'Belief, however well founded, that an article sought is concealed in a dwelling house furnishes no justification for a search of that place without a warrant. And such searches are . . . unlawful notwithstanding facts unquestionably showing probable cause.' *Id.*, 269 U.S. at page 33, 46 S.Ct. at page 6 [70 L.Ed. at page 149, 51 A.L.R. at page 414].'' (See also, *People* v. *Haven*, 59 Cal.2d 713, 720 [31 Cal.Rptr. 47, 381 P.2d 927]; *Castaneda* v. *Superior Court*, 59 Cal.2d 439, 443-444 [30 Cal.Rptr. 1, 380 P.2d 641].) '' 'The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime. Any assumption that evidence sufficient to support a magistrate's disinterested determination to issue a search warrant will justify the officers in making a search without a warrant would reduce the Amendment to a nullity and leave the people's homes secure only in the discretion of police officers. . . . The right of officers to thrust themselves into a home is also a grave concern, not only to the individual but to a society which chooses to dwell in reasonable security and freedom from surveillance. When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman or Government enforcement agent.' '' (*Chapman* v. *United States*, 365 U.S. 610, 614-615 [81 S.Ct. 776, 5 L.Ed.2d 828, 832], quoting from *Johnson* v. *United States*, 333 U.S. 10, 13-14 [68 S.Ct. 367, 92 L.Ed. 436, 439-440].)

 The Attorney General contends, however, that it was necessary for the officers to act without a search warrant to prevent Edgar's mother from successfully disposing of the pictures. No such necessity appears. The officers knew that Edgar wished the pictures hidden, not destroyed. They could have kept his mother under surveillance, and forwarned of what Edgar wished her to do, they were con-

fronted with no substantial risk that she would succeed in putting the pictures beyond their reach before a warrant could be obtained.

▮ In any event, necessity is irrelevant, for "both the United States Constitution and the California Constitution make it emphatically clear that important as efficient law enforcement may be, it is more important that the right of privacy guaranteed by these constitutional provisions be respected. ▮ Since in *no* case shall the right of the people to be secure against unreasonable searches and seizures be violated, the contention that unreasonable searches and seizures are justified by the necessity of bringing criminals to justice cannot be accepted. It was rejected when the constitutional provisions were adopted and the choice was made that all the people, guilty and innocent alike, should be secure from unreasonable police intrusions, even though some criminals should escape.'' (*People* v. *Cahan,* 44 Cal. 2d 434, 438 [282 P.2d 905, 50 A.L.R.2d 513].)

The part of the judgment appealed from is reversed.

Gibson, C. J., Peters, J., Tobriner, J., and Peek, J., concurred.

McCOMB, J.—I dissent. I would affirm the judgment for the reasons expressed by Mr. Justice Salsman in the opinion prepared by him for the District Court of Appeal (Cal. App.) 28 Cal.Rptr. 139.

Schauer, J., concurred.