[Crim. No. 7340. In Bank. March 20, 1964.]

THE PEOPLE, Plaintiff and Respondent, v. DOYLE ALVA TERRY, Defendant and Appellant.

Doyle A. Terry, in pro. per., and Ernest L. Graves, under appointment by the Supreme Court, for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Jack K. Weber, Deputy Attorney General, for Plaintiff and Respondent.

TOBRINER, J.—This case involves an automatic appeal from a death penalty. Charged with one count of conspiracy to commit robbery, five counts of robbery and one count of first degree murder, defendant, after a jury trial, was found guilty of all those offenses. The jury rendered a verdict for the death penalty on the murder count. On appeal (*People* v. *Terry* (1962) 57 Cal.2d 538 [21 Cal.Rptr. 185, 370 P.2d 985]) this court affirmed the judgment excepting the determination of the penalty on the murder count. Upon retrial of that issue the jury again returned a verdict for the death penalty; the court entered judgment accordingly.

At the retrial of the penalty issue the prosecution developed the theory that defendant operated as the leader of an armed gang which had committed several robberies of bank messengers in the Los Angeles area, and that the murder of Owings, a police officer, occurred when the defendant and Ross Wilson, defendant's accomplice in the robberies, attempted to abandon an automobile which they had used in several of such offenses. At the time of the killing defendant had been released on bail pending the appellate determination of his conviction for violations of Penal Code sections 288 and 286. The police also wanted him on a warrant charging him with child molestation, possession of marijuana and furnishing marijuana to a minor. The prosecution contended that, fearing that the officer would learn of the warrant for his arrest and that his presence near the automobile would connect him with the robberies, defendant killed the officer in cold blood.

Proceeding at the retrial in propria persona, defendant offered evidence to show that he was not at the scene of the various armed robberies and that he was innocent of the charges. He also attempted to establish that when the killing occurred he had the gun wrapped up in a sweater in his hands; that the officer approached and demanded to know what was in the sweater; that when defendant's answer failed to satisfy the officer, he lunged at defendant, precipitating as a reflex action defendant's discharge of the gun.

For reasons which we shall hereinafter discuss, defendant was unable to place the evidence to this effect before the jury.

The case raises another aspect of the almost insoluble difficulty of defining the purpose, function and content of the penalty trial in capital cases. We have previously pointed out that the Legislature fixed no standards for the guidance of the jury in determining whether a defendant should suffer the penalty of life imprisonment or death, and to that extent left the function of the jury in a somewhat nebulous state. (*People* v. *Morse,* 60 Cal.2d 631 [36 Cal.Rptr. 201, 388 P.2d 33].) We now face the further fact that the Legislature did not clearly define the scope of the penalty trial; we must determine what kind of evidence is admissible at such a trial and fix the limits, if any, of this legislatively uncharted enquiry.

The jury's obligation of deciding between life imprisonment and death should not be aggravated by an undue expansion or contraction of the subject matters to be heard or considered at the penalty trial. We disapproved of instructions, evidence and argument in *People* v. *Morse, supra,* 60 Cal.2d 631, that directed the jury's deliberations into the misleading matters of the future action of the Adult Authority and the possible reduction of the sentence by the Governor and the trial judge, and we shall point out that comparable errors occurred here.

We shall explain further that an undue constriction of the subject matter and of the evidence admissible in the guilt phase which occurred here is as disastrous as was the undue extension of the matters presented to the jury in *Morse.* The jury should have before it not only the prosecution's unilateral account of the offense but the defense version as well; the jury should be afforded the opportunity to see the whole picture, yet that comprehensive consideration was denied here.

A. *Instructions and argument on postsentencing procedures.*

██ The instructions and argument in the instant case effected the same errors which we condemned in *People* v. *Morse, supra,* 60 Cal.2d 631. They diverted the jury's attention from its own task of decision to the roles of the Governor, the Legislature and the Adult Authority, as well as to possibilities of reduction of the sentence by their action.

The court instructed the jury "that a person in the defendant's position if sentenced to death may have that sentence commuted by the Governor but only with the approval

of the majority of the State Supreme Court." As we pointed out in *Morse,* such an instruction erroneously "diminished the jury's sense of obligation."

The court further instructed "that the Legislature of the State of California has the power to change the law in the future in such a way that this defendant's sentence could be lessened but in no event could the Legislature at any time in the future increase the punishment which you impose." In depicting the contingency of legislative reduction of the sentence of life imprisonment the court went beyond the *Morse* instruction and deepened the error.

We said in *Morse* "The jury should not be invited to decide if the defendant will be fit for release in the future; it should not at all be involved in the issue of the time, if any, when the defendant should be released; it should not be propelled into weighing the possible consequence of the Authority's administrative action." (60 Cal.2d at p. 643.) The court instructed here "It is also the law of the state that a person under a sentence of life imprisonment may be paroled, but not until he has served at least seven years." The instruction pointed out that "the paroling authority must consider all statements and recommendations which may have been submitted by the judge, district attorney, and sheriff" but "is not bound by such statements or recommendations." In this regard the instructions more elaborately describe the procedure of the Adult Authority than those in *Morse.*

Finally, in the instant case, the prosecution in its argument to the jury emphasized the factor of parole: Defendant "has got the possibility of parole." The prosecution further emphasized in argument the alleged danger of permitting the Adult Authority to determine defendant's parole upon the ground that if defendant could have "fooled" the psychiatrists at Atascadero into finding that he was not a sexual psychopath, he could similarly "fool" the Adult Authority.

The evils effected by the errors of *Morse* occurred here.

B. *Evidence admissible at penalty trial.*

The history of Penal Code section 190.1 serves at least as one indicium of the type of evidence admissible at the penalty trial. Prior to the enactment of the section in 1957, the jury, in a possible death penalty case, returned a single verdict as to guilt and the penalty. But the anomaly of this amalgamated verdict was graphically described by Justice Schauer in *People* v. *Friend* (1957) 47 Cal.2d 749, 763 [306 P.2d 463], who contrasted the Adult Authority's complete

study of the defendant's background and of the aggravating and mitigating circumstances in noncapital cases with the absence of such study in capital cases.

Justice Schauer said: "... In tailoring punishment for most offenders the controlling agency has the benefit of a complete study of the person. In the whole life story the particular crime is an incident, a controlling one for the time being, probably, but only one of many which the board considers in reaching its ultimate conclusion. It seems, therefore, incongruous that in a case of first degree murder the jury conceivably may be given the responsibility of selecting life imprisonment or death as punishment, but in making that determination may be denied the full measure of enlightenment which for less drastic punishments is available to the administrative board...."

To meet this justifiable criticism the Legislature established a separate procedure to resolve the issue of penalty, enacting section 190.1 to the effect that "Evidence may be presented at the further proceedings on the issue of penalty, of the circumstances surrounding the crime, of the defendant's background and history, and of any facts in aggravation or mitigation of the penalty...."

In view of the origin and design of the section, this court, as we shall show, has recognized its broad but not unbounded area of operation. ■ In *People* v. *Love* (1960) 53 Cal.2d 843, 856 [3 Cal.Rptr. 665, 350 P.2d 705], we said: "Since the jury has complete discretion to choose between alternative penalties in the light of the objectives of criminal law [citations] the permissible range of inquiry on the issue of penalty is necessarily broad." We have applied "the broad, liberal rule on admission of evidence that has always existed where a defendant has pleaded guilty and the only issues being tried relate to the degree of the crime and the penalty to be imposed." (*People* v. *Jones* (1959) 52 Cal.2d 636, 647 [343 P.2d 577].)

We have permitted in the penalty trial a showing of the defendant's commission of criminal acts similar, or related, to the crime for which he is being tried.[1] We have likewise

---

[1]Thus in *People* v. *Jones, supra,* at page 647, we sanctioned the introduction of evidence of similar patterns of effecting rape; we said, "... If there are any limitations on the admission of such evidence, it is certainly the rule that if the evidence would have been admissible on the trial of the guilt issue, it is admissible on the trial aimed at fixing the penalty." In *People* v. *Purvis* (1959) 52 Cal.2d 871, 881

sanctioned the introduction of testimony of criminal acts not necessarily related to the crime for which defendant was being tried.[2] Records and reports, which meet the test of competency, disclosing defendant's past conduct, have been held admissible.[3]

As we have stated, however, the subject matter of the penalty trial cannot extend beyond certain limitations. We note three such restrictions: the evidence must not be incompetent;[4] it must not be irrelevant, that is, of such a nature

[346 P.2d 22], we held the prosecution could properly present to the jury evidence of defendant's killing of his wife which resembled in execution the murder of defendant's paramour for which he was standing trial. Likewise in *People* v. *Griffin* (1963) 60 Cal.2d 182 [32 Cal.Rptr. 24, 383 P.2d 432], we sustained the prosecution's introduction of evidence of conduct strikingly similar to that which resulted in the conviction then under consideration but for which the defendant had been acquitted by a court of competent jurisdiction.

[2]Thus in *People* v. *Pike* (1962) 58 Cal.2d 70 [22 Cal.Rptr. 664, 372 P.2d 656] defendant sought to explain his "criminal propensities as being an outgrowth of a personality change brought about by his grief over his father's death." (P. 94.) We permitted rebuttal testimony to show that during the period of his father's illness defendant had been arrested on a charge of pimping and that he had been committed for this offense. We sustained in *People* v. *Bentley* (1962) 58 Cal.2d 458 [24 Cal.Rptr. 685, 374 P.2d 645], the introduction of evidence to show that defendant and another person "coerced four teen-age boys to accompany them in the commission of the robbery, kidnapping and attempted murder of a service station attendant in Arizona about a month after the Fresno murder was committed . . . . The jury was entitled to know that he [defendant] was not revulsed by that killing but was willing to kill again." (Pp. 460-461.) In *People* v. *Robillard*, (1960) 55 Cal.2d 88, 100 [10 Cal.Rptr. 167, 358 P.2d 295] we said, "It was not error to receive evidence of defendant's past crimes"; that "during the penalty phase of the trial, evidence of defendant's prior crimes was admissible for consideration by the jurors in fixing the penalty."

[3]We have permitted the introduction into evidence of defendant's jail and juvenile court records (*People* v. *Ward* (1958) 50 Cal.2d 702, 708 [328 P.2d 777, 76 A.L.R.2d 911]), of prison disciplinary reports compiled while defendant was in Alcatraz (*People* v. *Lopez* (1963) 60 Cal.2d 223, 253 [32 Cal.Rptr. 424, 384 P.2d 16]), and of defendant's "admissions of guilt in letters and statements to officers investigating robbery charges on which he was not prosecuted." (*People* v. *Ketchel* (1963) 59 Cal.2d 503, 542 [30 Cal.Rptr. 538, 381 P.2d 394].)

[4]As to incompetent evidence, we have said ". . . evidence of earlier crime must meet the rules of admissibility governing proof of that crime or be otherwise properly admissible in the penalty proceeding." (*People* v. *Purvis* (1961) 56 Cal.2d 93, 97 [13 Cal.Rptr. 801, 362 P.2d 713].) We have held incompetent ". . . hearsay evidence such as the testimony of a parole officer who, while admittedly not knowing any of

that its prejudice to defendant outweighs its probative value;[5] and it must not be directed solely to an attack upon the legality of the prior adjudication. Previous decisions sustain the first two of these limitations; the third rests upon the self-evident prohibition of any attempt to relitigate the prior conviction.

These guidelines of the precedents indicate the proper disposition of the six types of evidence presented in the instant trial.

1. *Evidence tending to show defendant's possible innocence of the crimes involved in the instant case for which he has been convicted.*

 Defendant contends that the court erroneously precluded inquiry at the penalty trial into his possible innocence of the crimes involved in the instant proceeding for which he had been convicted. Specifically, defendant argues that his possible innocence is a mitigating factor which the jury determining the penalty may properly consider but that here the erroneous rulings and statements of the trial court foreclosed a different and second jury, which heard the penalty phase, from considering such matters.

Defendant points out that a jury which determines both guilt and penalty may properly conclude that the prosecution has discharged its burden of proving defendant's guilt beyond a reasonable doubt but that it may still demand a

the facts of his own knowledge, was permitted to read into evidence from records of the Adult Authority a 'Cumulative Case Summary,' containing many statements regarding appellant's past actions and character as to which no other proof was offered.'' (*People* v. *Hamilton* (1963) 60 Cal.2d 105, 131 [32 Cal.Rptr. 4, 383 P.2d 412].) In *People* v. *Purvis* (1959) 52 Cal.2d 871, 883 [346 P.2d 22], we upheld the rejection of ''. . . otherwise incompetent evidence contained in probation reports.''

[5]The decisions have excluded from the penalty trial evidence which produces more prejudicial impact than probative force. Thus we held that the admission of a photograph of the deceased victim showing a portion of her body, including her face, taken after her death and a tape recording of the decedent's dying declaration served ''primarily to inflame the passions of the jurors'' and ''had no significant probative value''; the admission worked prejudicial error. (*People* v. *Love* (1960) 53 Cal.2d 843, 856 [3 Cal.Rptr. 665, 360 P.2d 705].) In similar fashion evidence of suspected criminal activity of defendant, such as the testimony of a police officer that he ''had seen persons whom he 'knew' to be narcotic addicts enter the premises'' of defendant lacked ''probative value.'' (*People* v. *Hamilton* (1963) 60 Cal.2d 105, 132 [32 Cal.Rptr. 4, 383 P.2d 412].)

greater degree of certainty of guilt for the imposition of the death penalty. If the same jury determines both guilt and penalty, the introduction of evidence as to defendant's asserted innocence is unnecessary on the penalty phase because the jury will have heard that evidence in the guilt phase. If, however, such evidence is excluded from the penalty phase, the second jury necessarily will deliberate in some ignorance of the total issue.

Section 190.1 specifically sanctions the presentation of evidence as to "the circumstances surrounding the crime ... and of any facts in ... mitigation of the penalty." This language can hardly exclude defendant's version of such circumstances surrounding the crime or of his contentions as to the principal events of the instant case in mitigation of the penalty.

Indeed, the nature of the jury's function in fixing punishment underscores the importance of permitting to the defendant the opportunity of presenting his claim of innocence. The jury's task, like the historian's, must be to discover and evaluate events that have faded into the past, and no human mind can perform that function with certainty. Judges and juries must time and again reach decisions that are not free from doubt; only the most fatuous would claim the adjudication of guilt to be infallible. The lingering doubts of jurors in the guilt phase may well cast their shadows into the penalty phase and in some measure affect the nature of the punishment. Even were it desirable to insulate the psychological reactions of the jurors as to each trial, no legal dictum could compel such division, and, in any event, no statute designs it.

The purpose of the penalty trial is to bring within its ambit factors such as these. In this respect we particularly heed the opinion of Justice Schauer in *People* v. *Friend* (1957) 47 Cal.2d 749, 767-768 [306 P.2d 463], whose observations, as we have noted, led to the establishment of a separate procedure on the penalty issue: "[I]n deciding the question whether the accused should be put to death or sentenced to imprisonment for life it is within their discretion alone to determine, each for himself, how far he will accord weight to the considerations of the several objectives of punishment ... of the presumptions concerning, or possible uncertainties attaching to, life imprisonment, or of the irrevocableness of an executed sentence of death, *or an apprehension that explanatory facts may exist which have not been brought to light,* or any other consideration whatever which in the light of the

evidence, the duty they owe to the accused and to the state, and the law as explained to them by the judge, appears to them to be important.'' (Italics added.)

In the instant case the court's rulings deprived the jury of an examination of the whole picture. In the course of *voir dire* examination of prospective jurors the court refused to permit defendant the right to examine jurors with respect to their possible reaction to his claim of innocence and misled the jury into believing that they could not take into consideration that claim. The rulings thereby eliminated from the jury's deliberations the defendant's theory of the facts and any possible doubt as to defendant's guilt.

Neither the defendant nor the prosecution should suffer an improper restriction upon a reasonable *voir dire* examination of prospective jurors or a frustration of an intelligent exercise of peremptory challenges and challenges for cause (Pen. Code, § 1078). Yet such frustration and some resulting confusion occurred here. During the examination defendant asked a prospective juror: ''The defendant's theory is that the policeman in an attempt to make an unreasonable search and seizure and lunging at myself, and grabbing at the sweater that I was holding in my hand, startled me so that the gun unexpectedly discharged. This is the defendant's theory. Of course, the prosecution's theory is entirely different, but if you believe this theory, would you take that into consideration regardless of the fact of what Mr. Compton may say or what their theory may be in this proceeding?'' To an objection to the question the court properly pointed out that the jury was not to relitigate the issue of defendant's guilt of first degree murder. But the court proceeded further. Upon defendant's question as to whether the jury could take defendant's theory of the events into consideration, the court said: ''This is something they cannot take into consideration. They start from that premise.''

In failing to differentiate between total relitigation and doubt of guilt as a mitigating factor, the court erred; it restricted defendant's proper examination of the jurors and it removed an important issue from their deliberations. Nor can we assess the extent of the deleterious effect of this error in inhibiting defendant in cross-examining adverse witnesses and producing his own showing.

2. *Evidence of conviction of armed robbery in Oklahoma for which defendant has received a pardon.*

Defendant contends that a certified copy of his con-

viction of armed robbery in Oklahoma in 1947 should not have been admitted into evidence, over his objection, because his subsequent pardon " 'releases the punishment and blots out of existence the guilt so that in the eye of the law the offender is innocent as if he never committed the offense. It obliterates, in legal contemplation, the offense itself.' " (*State* ex rel. *Cloud* v. *State Election Board* (1934) 169 Okla. 363, 365-366 [36 P.2d 20, 94 A.L.R. 1007].)

Under the full faith and credit clause of the United States Constitution, article IV, section 1, California must give an administrative decision of Oklahoma, represented here by the pardon, the same effect in California as that decision would have borne in Oklahoma.[6] Since Oklahoma courts treat the pardoned defendant as a person not convicted of crime, California must defer to that definition of defendant's status.[7] The People introduced the showing of the Oklahoma conviction for the very purpose of demonstrating to the jury that defendant had committed the crime of robbery; the trial court, pursuant to the full faith and credit clause, should have rejected it.

3. *Evidence as to the amended information charging a violation of Penal Code section 288a.*

In 1954 an amended information charged defendant in one count with violation of Penal Code section 288a and in another with violation of Welfare and Institutions Code section 702. Defendant pleaded guilty to the lesser offense of contributing to the delinquency of a minor and received probation. Defendant now urges that because of the hearsay (*People* v. *Purvis* (1959) 52 Cal.2d 871, 883 [346 P.2d 22]) and speculative (*People* v. *Hamilton*, 60 Cal.2d 105, 132, [32 Cal.Rptr. 4, 383 P.2d 412]) nature of the information, the evidence should have been excluded.

The information, insofar as it charged a violation of section 288a, did constitute hearsay if the prosecution introduced it as proof of defendant's violation of that code section. (See 3 Wigmore, Evidence (3d ed. 1940) § 980a, p. 545.) In *People* v. *Hamilton, supra,* we held that under the

---

[6]*Magnolia Petroleum Co.* v. *Hunt* (1943) 320 U.S. 430, 435, 443 [64 S.Ct. 208, 88 L.Ed. 149, 153, 157-158, 150 A.L.R. 413, 416-417, 421]; Ehrenzweig, Conflict of Laws (1962) § 49, p. 174, fn. 1.

[7]See *Gibson* v. *Westoby* (1953) 115 Cal.App.2d 273 [251 P.2d 1003] [California must give full faith and credit to a sister state determination of status of incompetency]; *Estate of Smith* (1948) 86 Cal.App.2d 456 [195 P.2d 842] [same for status of adopted child; Ehrenzweig, *op. cit. supra,* p. 186, fn. 36].

rule of *People* v. *Love*, 53 Cal.2d 843, 856 [5 Cal.Rptr. 665, 350 P.2d 705], the "probative value and the inflammatory effect of proffered evidence must be carefully weighed"; we ruled that testimony to the effect that defendant "had been arrested when no charges were filed" was too speculative to be admissible on the issue of whether defendant committed the alleged wrongs. The prejudicial effect outweighed the probative value.

Similar reasoning applies to an information. Although an information is more probative of guilt than arrest because it proceeds one step further in the criminal process, in neither situation has a jury found beyond reasonable doubt that the defendant has committed the alleged offense. Short of this safeguard the use of incidents in the preliminary stages of the criminal process as evidence to prove that a defendant has committed an alleged criminal act becomes too prejudicial when weighed against its probative value.[8]

4. *Evidence as to defendant's conviction for violation of Penal Code sections 288 and 286.*

In 1958 defendant and Ross Wilson stood separate trials for charged violations of Penal Code sections 288 and 286. Prior to Terry's trial the two victims, both of whom were minors, left California and returned to the custody of their father in Virginia. At Terry's trial the prosecution, pursuant to Penal Code section 686, subdivision 3, introduced the testimony of the victims by reading the transcript of their testimony at the preliminary hearing. Defendant suffered a conviction; he appealed, alleging that this procedure denied him his right, protected by due process, to confront his accusers and that, further, the juvenile court improperly removed the minors from this state. The District Court of Appeal affirmed the conviction (*People* v. *Terry* (1960) 180 Cal.App.2d 48 [4 Cal.Rptr. 597]); we denied appellant's petition for hearing.

The trial court properly differentiated between defend-

---

[8]Furthermore, in the penalty trial the same safeguards should be accorded a defendant as those which protect him in the trial in which guilt is established. In *People* v. *Hamilton, supra,* at page 129, we held that if the prosecution attempts to prove prior crimes, the defendant is entitled to the protection of the rule which prohibits the admission of a confession until the corpus delicti has been proved. As a corollary, defendant should not be subject to a finding of a jury that he committed prior crimes unless his commission of such prior crimes has been proven beyond a reasonable doubt.

ant's right to present his version of the facts involved in these criminal proceedings and the relitigation of the convictions themselves. Thus the court permitted Wilson to testify that he told the truth on the witness stand when, at defendant's trial on the sections 288 and 286 charges, he testified to defendant's innocence.

Defendant's first objection as to this phase of the proceeding, however, lies in the trial court's refusal to allow defendant to present evidence to show that the prosecution offered to dismiss some of the counts if he would plead guilty to a lesser charge, but that he refused the "deal." The court rejected defendant's offer of this evidence on the ground that it would amount to relitigating the former conviction. As we have stated, *supra*, a defendant should not be entitled to open up the legality of the conviction or the process of its adjudication. An attack upon the legal process of the litigation is an attack upon the adjudication as such; it seeks a retrial of the issue because of the alleged failure of due process. Such a subject matter differs from defendant's version or explanation of the facts involved in the crime.

Defendant's second objection rests upon the trial court's refusal to accept his offer to show that, instead of producing the two victims as complaining witnesses at the trial, the prosecution read their testimony from the transcript of the preliminary hearing. The trial court held that the legality of the conviction constituted a matter of law, that the matter had been adjudicated by direct attack and that Terry's only remedy lay in collateral attack (i.e., habeas corpus) of the judgment.

Defendant cannot, in any event, claim that the exclusion of such evidence constituted error. He rejected the prosecution's offer to stipulate at the penalty hearing that the trial upon the Penal Code sections 288 and 286 charges had been conducted on the basis of the transcripts but that the appellate courts had upheld that procedure. The stipulation would have presented to the jury the point which defendant sought to establish; defendant cannot now win a reversal because of an alleged evidentiary omission which he, himself, precipitated.

5. *Evidence obtained by allegedly illegal search and seizure at defendant's Ben Street house.*

At defendant's guilt trial the prosecution introduced, over defendant's objection on the ground of an illegal

search and seizure, evidence obtained from defendant's Ben Street house. On appeal, we rejected defendant's contention and held that the evidence was admissible. (*People* v. *Terry, supra,* 57 Cal.2d at pp. 558-559.)

At the penalty retrial the prosecution again sought to introduce this evidence. Rejecting defendant's objection, the trial court refused to require the prosecution to lay a foundation to show the legality of the search, ruling that our decision on the prior appeal foreclosed the matter. Defendant, nevertheless, cross-examined the officers making the search. Their testimony regarding the circumstances under which they undertook the search substantially duplicated their testimony at the former trial.

On appeal defendant again argues that the evidence should have been excluded as the product of an illegal search and seizure. This issue, however, has already been litigated in the prior appeal of the guilt trial; such disposition, pursuant to the doctrine of the law of the case, forecloses the admissibility of the evidence. (*Pigeon Point Ranch, Inc.* v. *Perot* (1963) 59 Cal.2d 227, 230-232 [28 Cal.Rptr. 865, 379 P.2d 321].)[9]

6. *Evidence obtained by allegedly illegal search and seizure at Garfield Street apartment.*

Over defendant's objection that it had been obtained illegally, the prosecution introduced a marijuana ciga-

---

[9] Although the doctrine does not apply if it will lead to a harsh result, as, for example, where the rules of law have been altered or clarified by an intervening decision (*Subsequent Injuries Fund* v. *Industrial Acc. Com.* (1960) 53 Cal.2d 392, 395 [1 Cal.Rptr. 833, 348 P.2d 193]), no such alteration occurred here. Our recent case of *Tompkins* v. *Superior Court* (1963) 59 Cal.2d 65 [27 Cal.Rptr. 889, 378 P.2d 113], does not affect the ruling here. We held there that ''a joint occupant's right of privacy in his home is not completely at the mercy of another with whom he shares legal possession.'' (P. 69.) We forbade the admission of evidence recovered after the occupant on the premises slammed the door in the officer's face and the officer then broke down the door and made the search. In *Tompkins,* however, we did not forbid all searches of a dwelling without the consent of the joint occupant. Rather we limited our holding to prevent entry and search of the premises ''over the objection of another joint occupant present at the time, at least where [as in this case] no prior warning is given, no emergency exists and the officer fails even to disclose his purpose to the occupant who is present or to inform him that he has the consent of the absent occupant to enter.'' (P. 69.) Thus, *Tompkins* is distinguishable from the instant case; here defendant was not even present at the time of the search.

rette into evidence that the officers had found on the dashboard of defendant's automobile.

Two police officers testified that they were on duty in Hollywood in January of 1960 when they were approached by two youths, aged 18 and 17, who told them that they had met defendant outside the U.S.O. in Hollywood and that he had invited them to his apartment. Accepting the invitation, the boys had accompanied defendant to his car where they had seen a marijuana cigarette on a clip on the dashboard. At the apartment defendant had offered them some marijuana and performed an indecent act as to one of the boys when they became frightened and fled the apartment.

The officers further testified that they had returned to the apartment house with the two boys. Before entering it, one of the officers had asked the boys to point out defendant's automobile. It was parked in a subterranean garage. Through the window of the car, the officer had observed an object on the clip of the dashboard that appeared to be a marijuana cigarette. The officer then went to the apartment to talk to defendant; defendant asked if he could go to another room to make a telephone call. While out of view of the officer, defendant left the apartment by a window. The police, proceeding without a warrant, impounded defendant's car; chemical examination confirmed that the cigarette contained marijuana.

Under these circumstances the officers properly searched the automobile and obtained the cigarette. Apparently the apartment garage was a common area; the officers did not commit a trespass by entering it. Nor did the officers conduct an unreasonable search by looking in the window of the car. (*People* v. *Martin* (1955) 45 Cal.2d 755, 762 [290 P.2d 855].)

The officers' search of the automobile after they returned from the apartment did not violate defendant's rights. If a police officer has probable cause to believe that an automobile contains contraband he need not obtain a search warrant in order to search it. (*People* v. *Gale* (1956) 46 Cal.2d 253, 255 [294 P.2d 14]; *People* v. *Brajevich* (1959) 174 Cal.App.2d 438, 444 [344 P.2d 815].) In this case the officers had heard the youths' story, had corroborated it by observing through the locked window of the automobile an object that appeared to be a marijuana cigarette, and had witnessed defendant's flight under suspicious circumstances. These facts adequately establish probable cause for suspecting that the automobile contained marijuana.

 That an officer need not obtain a search warrant in this situation has not been affected by recent cases holding

that he must obtain a warrant to search a building even though he has probable cause for such investigation. (*People v. Edgar* (1963) 60 Cal.2d 171 [32 Cal.Rptr. 41, 383 P.2d 449]; *Castaneda* v. *Superior Court* (1963) 59 Cal.2d 439, 443 [30 Cal.Rptr. 1, 380 P.2d 641].) The difference in treatment between buildings and automobiles historically has been justified by the mobility of the automobile and the greater need for protection of the fundamental rights of privacy that attach to a man's home. (*Chapman* v. *United States* (1961) 365 U.S. 610 [81 S.Ct. 776, 5 L.Ed.2d 828]; *Carroll* v. *United States* (1924) 267 U.S. 132 [45 S.Ct. 280, 60 L.Ed. 543, 39 A.L.R. 790].)

The foregoing analysis of defendant's contentions discloses a number of errors.[10] The instructions and argument as to postsentencing procedures were erroneous. The court should have admitted at the penalty trial evidence tending to show defendant's possible innocence of the involved crimes; the court should have excluded the evidence of the conviction of armed robbery in Oklahoma as well as the evidence as to the amended information charging a violation of Penal Code section 288a. To paraphrase the language of *People* v. *Hamilton* (1963) 60 Cal.2d 105, 138 [32 Cal.Rptr. 4, 383 P.2d 412], "These errors . . . were not minor or technical. They were substantial."

If error occurs in the penalty trial this court attempts to determine if it is "prejudicial." We are to decide if the error is such that it is reasonably probable that the jury would have returned a verdict more favorable to the defendant in the absence of the error. But, as Justice Peters has explained in *People* v. *Hamilton, supra, any* substantial error may have led a single juror to vote for the death penalty, who, if the error had not occurred, would not have done so.

Moreover, the task of this court in ascertaining whether the error has caused prejudice becomes formidable in view of

---

[10]In view of our disposition of the case we see no need to discuss other contentions of the parties. We mention a matter that may arise on retrial. In the instant case defendant, who has conducted his defense in propria persona, asked the court to appoint counsel for the special purpose of protecting him during possible cross-examination following his taking the stand in his own defense. We do not believe the trial court abused its discretion in denying defendant the sought piecemeal representation. To require an attorney to serve in such a limited capacity places him in an awkward position and affords defendant minor aid of doubtful value. (*People* v. *Mattson* (1959) 51 Cal.2d 777, 793 [336 P.2d 937].)

the nature of the penalty trial itself. We have said that the jury must decide the question without benefit of guideposts, standards or applicable criteria; we have pointed out that the very subject matter of the penalty trial is not clearly defined. To attempt to assess the effect of error in this legal vacuum is to superimpose one untestable surmise upon another. We must not pile conjecture upon conjecture and posit the decision of life or death upon a pyramid of guesses. Hence we must conclude that in view of the nature of this kind of trial, the above errors necessarily caused prejudice.

The judgment imposing the death penalty is again reversed, and the cause remanded for retrial on the issue of penalty, and for the pronouncement of a new sentence and judgment as provided by law.

Gibson, C. J., Traynor, J., Peters, J., and Peek, J., concurred.

SCHAUER, J., Dissenting.—In their concluding paragraph the majority (*ante,* p. 154) say: "We have said that the jury must decide the question without benefit of guideposts, standards or applicable criteria; we have pointed out that the very subject matter of the penalty trial is not clearly defined. To attempt to assess the effect of error in this legal vacuum is to superimpose one untestable surmise upon another. We must not pile conjecture upon conjecture and posit the decision of life or death upon a pyramid of guesses."

The quoted language, like that of the same majority in *People v· Hines* (1964) *post,* p. 164 [37 Cal.Rptr. 622, 390 P.2d 398] is the language of speculation, "conjecture," and "guesses." In the face of that language our constitutional duty is altogether clear: we are obligated to affirm.

Reference is made to sections 4 and 4½ of article VI, California Constitution, and to the discussion of those sections and the relevant decisional law of this state, all as related in my concurring and dissenting opinion in *People* v. *Hines* (1964) *supra, post,* p. 175. For all of the reasons explained therein I would affirm the judgment.

McComb, J., concurred.

The petitions of the appellant and the respondent for a rehearing were denied April 15, 1964. Schauer, J., and McComb, J., were of the opinion that the petition of the respondent should be granted.